TOMIO B. NARITA (SBN 156576)
JEFFREY A. TOPOR (SBN 195545)
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000
Facsimile:   (415) 352-2625
tnarita@snllp.com
jtopor@snllp.com

Attorneys for defendant
Asset Acceptance, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| TINA ARTEAGA,<br><br>Plaintiff,<br><br>vs.<br><br>ASSET ACCEPTANCE, LLC,<br><br>Defendant. | CASE NO.: 1:09-cv-01860 LJO GSA<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   August 24, 2010<br>Time:   8:30 a.m.<br>Crtrm.:   4<br><br>The Honorable Lawrence J. O'Neill |

I.  **INTRODUCTION**

The Supreme Court has declared that a plaintiff cannot survive summary by simply replacing "conclusory allegations of the complaint . . . with conclusory allegations of an affidavit." Instead, she must present "significant probative evidence" sufficient to justify proceeding to a jury trial.[1] Plaintiff Tina Arteaga has not done so, and this motion should be granted.

The undisputed business records of defendant Asset Acceptance, LLC relating to Arteaga's account show that Asset called her only eighteen times over six months. As a matter of law, these sporadic calls do not amount to harassment under the FDCPA. The only "evidence" supplied by Arteaga to oppose this is her own undocumented, uncorroborated, and conclusory testimony that Asset called her "daily" or "almost daily." Her testimony merely parrots back the conclusory allegations of her complaint; it is not sufficient to create a genuine issue of material fact.

Nor has Arteaga carried her burden regarding the alleged threat to access her bank account. Even if the Court assumes the conversation occurred exactly as she claims, it is clear that Asset's representative was simply explaining that a bank account can be accessed without having a cancelled check. Viewed in its entirety and in context, the Court can, and should, conclude that the least sophisticated consumer would not have been misled by the statement.

Finally, the record is now undisputed that Asset is entitled to prevail on its "bona fide error" defense. Asset showed with its moving papers that, assuming any such misrepresentation was made, it was contrary to the procedures and policies and procedures that Asset adapted that were reasonably designed to avoid the statement. Arteaga <u>admits</u> she has no contrary evidence. Asset is entitled to summary judgment.

---

[1] *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

## II. ARGUMENT

To withstand Asset's motion, Arteaga must come forward with more than just a mere "scintilla" of evidence, *Anderson v. Liberty Lobby, Inc.*, 472 U.S. 242, 252 (1986), and must do more than just raise "metaphysical doubts as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As the Supreme Court has explained, a party opposing summary judgment cannot defeat the motion by simply repeating conclusory allegations set forth in the complaint:

> In ruling upon a Rule 56 motion, 'a District Court must resolve any factual issues of controversy in favor of the non-moving party' only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment 'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.' **The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.**

*Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (emphasis added). Nor is a non-movant's uncorroborated, self-serving testimony alone sufficient to create a genuine issue of material fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *accord Booth v. Mee, Mee & Hoge, P.L.L.C.*, 2010 WL 988473, *2 (W.D. Ok. Mar. 15, 2010) (FDCPA action).

### A. Arteaga Has Failed To Create A Genuine Issue Of Material Fact Regarding Whether Asset Called Her So Frequently As To Constitute Abuse, Annoyance Or Harassment

Asset supplied detailed, contemporaneous business records showing that it called Arteaga only eighteen times in twenty-four weeks, less than once a week. Arteaga relies on her deposition testimony (which she admitted could have been "mistaken") that Asset supposedly contacted her on a "daily," "almost daily," or "real close to daily" basis. *See* Opposition (Doc. 16), at 3:14; Plaintiff's Statement of Genuine Issues (Doc. 16-1) ("Plaintiff's Statement"), at ¶ 15. This conclusory

testimony, however, is no different than the allegations in her complaint that Asset called her "constantly and continuously" and "place[d] daily collection calls to [her]." *See* Complaint at ¶¶ 12-13.  Under *Lujan*, this will not do.

Arteaga testified she first communicated with Asset in early 2009.  Beyond this, however, she could not identify when any particular call occurred or when any message was left.  She has no records – no notes, no phone log, no diary, no calendar – to corroborate her vague, conclusory testimony.  By contrast, Asset's detailed, contemporaneously-created account notes reflect it attempted to call her less than once a week over a six-month period.  **Arteaga does not dispute the contents of Asset's records**, *see* Plaintiff's Statement at ¶¶ 6-7, nor does she object to the admissibility of the records.

Uncorroborated, self-serving and conclusory testimony is not sufficient to create a genuine issue of material fact.  Arteaga has not even attempted to present evidence to contradict or undermine the accuracy of Asset's business records, and summary judgment is proper.  *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1201-02 (9th Cir. 1999) (affirming summary judgment in FDCPA action; when collector presented evidence of its mailing procedures showing it had sent a notice consistent with those procedures, plaintiff did not create genuine issue of material fact by merely disputing receipt of notice); *Booth*, 2010 WL 988473 at **3-5 (summary judgment for defendant in FDCPA action; plaintiff's affidavit in opposition merely repeated allegation in complaint that debt was incurred solely for personal purposes).  In sum, Arteaga has failed to offer any "'significant probative evidence,'" *Anderson*, 477 U.S. at 249 (quoted citation omitted), to support the conclusory allegations of her complaint.

Even if Arteaga's testimony is credited, her claims still fail.  Trying to reach a debtor by placing one or two unanswered calls a day is not harassment, so long as the collector does not also use any oppressive conduct, such as leaving a

threatening message. *See Udell v. Kansas Counselors, Inc.*, 313 F. Supp. 2d 1135, 1143-44 (D. Kan. 2004). There is no evidence that Asset committed any oppressive conduct. Asset intended to contact Arteaga about making payment arrangements for the account, not to annoy, harass or abuse her. *See* Doc. 15-1 at ¶ 8. Arteaga purportedly disputes this fact, saying Asset "intended to annoy, abuse and harass [her] in its collection efforts," *see* Plaintiff's Statement at ¶ 8, but she has not presented any supporting <u>evidence</u>. Instead, she cites a number of cases as "evidence." *See id.* at ¶¶ 8, 16. Cases are not evidence.

### B. The Case Law Does Not Support Arteaga

Arteaga attempts to distinguish the authorities cited by Asset, but she cannot. For example, Arteaga says *Tucker v. CBE Group, Inc.*, \_\_ F. Supp. 2d \_\_, 2010 WL 1849034 (M.D. Fla. May 5, 2010), is distinguishable because the plaintiff there "was a non-debtor" who "never answered the phone" and who "knew they were not trying to collect from him." *See* Opposition at 4:20-24. This makes no difference. Even though the *Tucker* plaintiff was not a "consumer" under section 1692a(3) of the FDCPA,[2] the analysis in *Tucker* is persuasive here, because sections 1692d and 1692d(5) protect "any person" – not just "consumers" – from harassing, oppressive or abusive conduct, such as repeated or continuous telephone calls. *See* 15 U.S.C. §§ 1692d & 1692d(5).[3]

The salient point from *Tucker* is that even though the debt collector called *fifty-seven* times, including *seven times in one day,* the court found that the collector had done so solely in an effort to reach the plaintiff's daughter, not with

---

[2] A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

[3] Further, similar to the plaintiff in *Tucker*, Arteaga testified that she had at most two or three conversations with Asset and admitted that she deleted any messages that it left for her without listening to them in their entirety.

an intent to harass the plaintiff. *See Tucker*, 2010 WL 1849034 at *3.[4] Here, like *Tucker*, the uncontroverted evidence shows Asset called Arteaga in order contact her about the debt, not to harass her. As in *Tucker*, there is no evidence that Asset repeatedly placed telephone calls after being asked to cease communication, or that it had called on the same day it left a message. *See id.*

Arteaga suggests the *Tucker* court "disregarded case law from throughout the nation recognizing that whether the nature and frequency of debt collection calls constitutes harassment is a factual issue for the jury." Opposition at 4:24-5:4. She cites to a long string of cases, *see id.* at 5:4-6:5, but only a few actually stand for the proposition for which she cites them, and none of them are binding on this court. The Ninth Circuit has never held that whether a debt collector's conduct violates section 1692d is always a question of fact to be decided by a jury, or that the issue can never be decided on summary judgment.[5]

---

[4] Arteaga's effort to distinguish *Katz v. Capital One*, 2010 WL 1039850 (E.D. Va. Mar. 18, 2010), and *Saltzman v. I.C. Sys., Inc.*, 2009 WL 2190359 (E.D. Mich. Sept. 30, 2009), is even less compelling. In *Katz*, although there were fifteen to seventeen calls following a cease-and-desist request, there was no evidence that the calls were intended to annoy, harass or abuse. Rather, like here, the evidence showed that the collector believed the debt was valid and was simply trying to reach plaintiff to collect it. *See* 2010 WL 1039850 at *3. In *Saltzman*, there were between twenty-two and sixty calls in a single month, the vast majority of which went unanswered. The court concluded that, given the fact that very few of the calls resulted in conversations, the debt collector was, again like here, simply trying to reach the consumer in an attempt to try to collect the debt. *See* 2009 WL 2190359 at *7.

[5] Indeed, in some of the cases cited by Arteaga, the court granted summary judgment in favor of the <u>plaintiff</u> on section 1692d claims. Other circuits have recognized that though this is "[o]rdinarily" a jury question, Congress nonetheless "indicated its desire for the courts to structure the confines of § 1692d. S. Rep. No. 95-832, 95th Cong., 1st Sess., *reprinted in* 1977 U.S. Code Cong. & Ad. News 1695, 1698," thereby permitting courts to resolve the issue as a matter of law when appropriate. *Jeter v. Credit Bureaul, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985); *accord Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006)

     Of course different courts have reached different conclusions when analyzing claims under sections 1692d and 1692d(5). The clear trend, however, is to reject such claims like this one, based solely upon the number of call attempts made by the collector.[6] Recent decisions recognize that multiple attempts to reach debtors must be sometimes made, and that no law is violated unless there is other conduct evidencing an intent to harass or annoy. Based on the volume and pattern of calls here, and the lack of evidence of intent to harass, oppress, or abuse Arteaga, Asset is entitled to summary judgment on Arteaga's claims under section 1692d and 1692d(5) of the FDCPA, and section 1788.11(d) of the Rosenthal Act.[7]

---

(observing that courts have dismissed § 1692d claims "as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor."); *Unterreiner v. Stoneleigh Recovery Assocs., LLC*, 2010 WL 2523257, *1 (N.D. Ill. June 17, 2010).

[6] Arteaga suggests the <u>content</u> of the calls, as opposed to just the <u>volume</u> of the calls, creates an issue of fact on her claims under section 1692d and section 1692d(5). *See* Opposition at 8:7-16 (". . . in the present case there are factual issues regarding the amount of telephone calls, as well as the content of the conversations that took place. . . ."). Her section 1692d claims is not based on the content of the calls; only her section 1692e claims are based on the alleged threat to attach her bank account. *See* Complaint at ¶¶ 16, 23. Arteaga cannot seek to amend her complaint in opposition to a summary judgment motion. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 & 1294 (9th Cir. 2000) (district court correctly prohibited plaintiff from pursuing disparate impact theory at summary judgment stage where complaint alleged only disparate treatment claim).

[7] Arteaga does not challenge Asset's argument that it is entitled to summary judgment on her claim under section 1788.11(e) of the Rosenthal Act. Even if her testimony that she had two conversations with Asset is credited, this is not sufficiently frequent to violate section 1788.11(e), which bars collectors from "communicating" too frequently with debtors. *See Krapf v. Nationwide Credit, Inc.*, 2010 WL 2025323, *4 (C.D. Cal. May 21, 2010).

### C. Asset Did Not Falsely Represent Or Imply That It Would Attach Arteaga's Bank Account If She Failed To Pay The Debt

Asset disputes that Ms. Plimely ever discussed the possibility of attaching Arteaga's bank account. But even if the Court credits Arteaga's testimony on the subject, the only relevant question is whether the statement – that a bank account "could" be accessed even if the consumer did not provide a copy of a cancelled check – was misleading within the meaning of the FDCPA. As Arteaga concedes, "[w]hether a communication is misleading under the FDCPA is a question of law for the court." Opposition at 10:3-4.[8] When the conversation is evaluated objectively, carefully, in its entirety and in context, the least sophisticated debtor would not have been mislead or deceived. *See Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996); *Swanson v. Southern Or. Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1989) (per curiam); *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005).

Arteaga does not dispute that, before she even spoke to Asset, she was worried about Asset attaching her bank account and expected it to say it would do so during the call. She claims that she – not Ms. Plimely – raised the issue of attachment, based on Internet rumors that she had previously read. If Ms. Plimely said anything about attachment, it was in response to Arteaga's concerns and was to explain a fact that Arteaga has admitted is true – that it was "possible" to access to consumer's bank account (in order to garnish wages, for example) without having a copy of the account holder's cancelled check. In other words, it was "possible" to find someone's bank account information using other tools and

---

[8] Arteaga argues that because Asset disputes the conversation occurred, "[t]his in and of itself is a factual determination for the jury to decide." Opposition at 13:5-11. Not so. The Court could assume (for purposes of this motion only) that the conversation occurred as Arteaga described it, in which case the Court could then decide whether Asset is entitled to summary judgment as a matter of law.

resources. Responding to a debtor's concerns and explaining what is technically possible does not, however, turn an innocent statement into an FDCPA violation. *See Shuler v. Ingram & Assocs.*, __ F. Supp. 2d __, 2010 WL 1838626, **6-7 (N.D. Ala. May 7, 2010) (nothing improper about informing debtor of legal options available to debt collector); *see also Wan v. Commercial Recovery Systems, Inc.*, 369 F.Supp.2d 1158 (N.D. Cal. 2005) (no FDCPA violation where collection letter stated: "I suggest that you consult with your attorney about what the laws in your state will allow our client to do to recover the monies owed to it and the further consequences of nonpayment."). Arteaga admitted Ms. Plimely never said that Asset <u>would</u> attach her account. Nor did Asset threaten to, or imply that it would, attach Arteaga's bank account. Accordingly, Asset is entitled to summary judgment on Arteaga's claims under sections 1692e(4) and 1692e(5) of the FDCPA,[9] and section 1788.13(j) of the Rosenthal Act.[10]

### D. Arteaga Has Failed To Establish A Genuine Issue Of Material Fact Regarding Asset's Bona Fide Error Defense

Arteaga argues that Asset is not entitled to summary judgment on its bona fide error defense because it "has not explained procedures in place to ensure that threats are not made to the debtor" and did not "present evidence supporting its account of its procedures." Opposition at 15:4-5-6. On the contrary, Asset explained its training, policies and procedures extensively, including that Asset trained its collectors that it was unlawful to threaten to sue consumers or to attach

---

[9] Arteaga has withdrawn her section 1692e(10) claim. *See* Opposition at 15:15-17.

[10] To the extent that Arteaga claims that Asset violated any of these provisions by threatening to sue her, such claims must fail. Arteaga admitted that Asset never threatened to sue her. *See* Topor Decl. at ¶ 4, Ex. B [Tr. at 36:8-9]

1  their assets, and provided the supporting testimony of two declarants, Kenneth
2  Proctor and Ms. Plimely.  *See* Doc. 15-1 at ¶¶ 11-14.

3  Arteaga **does not dispute** these facts.  She admits that she "has insufficient
4  knowledge regarding [these] allegation[s] and therefore disputes" them, *see* Doc.
5  16-1 ¶¶ 11-14 – but she never objects to Asset's evidence and presents none of her
6  own.  Her "dispute" is a dispute in name only and is not sufficient to create a
7  genuine issue of material fact.  *See Acheampongtieku v. Allied Interstate, Inc.*,
8  2005 WL 2036153, *6 (S.D.N.Y. Aug. 24, 2005) (defendant established bona fide
9  error defense where "Plaintiff does not even suggest that the inclusion of the
10 language was intentional and fails to contest in its Rule 56.1 statement that there
11 were reasonable procedures in place. . . . Plaintiff fails to produce a scintilla of
12 evidence to . . . refute the reasonableness of Allied's safeguard procedures");
13 *Shapiro v. Haenn*, 222 F. Supp. 29, 43-44 (D. Me. 2002) (summary judgment for
14 collector on bona fide error defense where plaintiff presented no evidence from
15 which jury could find collector's error was anything other than bona fide or that
16 any resulting violation of FDCPA was intentional).

17 The uncontested evidence establishes that Asset had policies and procedures
18 in place that were reasonably adapted to avoid falsely representing or implying
19 that Asset would attach a consumer's bank account if a debt was not paid, and
20 trained its employees, including Ms. Plimely, to prevent such representations.  *See,*
21 *e.g., Ross v. RJM Acquisitions Funding LLC,* 480 F.3d 493, 497-98 (7th Cir. 2007)
22 (rejecting notion that collector must prove its procedures were "state of the art" to
23 prevail); *Jenkins v. Heintz*, 124 F.3d 824, 833-34 (7th Cir. 1997) (procedures held
24 reasonable despite failure to investigate the legality of collecting forced placed
25 insurance premiums).  Even if the Court finds there is an issue of fact on whether
26 Ms. Plimely improperly threatened Arteaga in violation of the FDCPA or the
27 Rosenthal Act, Asset has shown by a preponderance of the evidence that the
28

violation was not intentional, and resulted despite procedures that were reasonably adapted to prevent the error.  *See* 15 U.S.C. § 1692k(c); Cal. Civ. Code § 1788.30(e); *see also Clark v. Capital Credit Coll. Servs., Inc.,* 460 F.3d 1162, 1177 (9th Cir. 2006).[11]  Accordingly, Asset is entitled to summary judgment on Arteaga's claims under sections 1692e(4) and 1692e(5) of the FDCPA and section 1788.13(j) of the Rosenthal Act.[12]

### III.  CONCLUSION

For the foregoing reasons, and the reasons set forth in Asset's opening memorandum, the Court should enter summary judgment for Asset.

DATED:  August 16, 2010   SIMMONDS & NARITA LLP
                          TOMIO B. NARITA
                          JEFFREY A. TOPOR


                          By:  s/Jeffrey A. Topor
                               Jeffrey A. Topor
                               Attorneys for defendant
                               Asset Acceptance, LLC

---

[11] Arteaga cites *Johnson v. Riddle*, 443 F.3d 723, 731-32 (10th Cir. 2006), for the proposition that whether the procedures in place were reasonable "is a question for the jury."  Opposition at 15:9-11.  The court there, however, did not hold that reasonableness was always a jury question.  Furthermore, Arteaga has submitted no evidence regarding the reasonableness of Asset's procedures.

[12] Arteaga argues that the Court should deny Asset's "motion based on the bona fide error defense as to [her] §§ 1692d and 1692d(5) claims."  Opposition at 14:10-22.  Asset, however, did not raise the bona fide error defense as to those claims.  *See* Doc. 15 at 17-18.