1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   TINA ARTEAGA,                        CASE NO. CV-F-09-1860 LJO GSA

11             Plaintiff,                 **ORDER ON DEFENDANTS' MOTION FOR
                                          RECONSIDERATION** (Docs. 22, 23)
12        vs.

13   ASSET ACCEPTANCE, LLC.,

14
             Defendant.
15   _____/

16                             **INTRODUCTION**

17        Plaintiff Tina Arteaga ("Ms. Arteaga") moves this Court to reconsider its August 23, 2010 Order

18   Granting Summary Judgment ("MSJ Order") in favor of defendant Asset Acceptance, LLC ("Asset").

19   This Court ruled in favor of Asset on Ms. Arteaga's Fair Debt Collection Practices Act, 15 U.S.C. §1692

20   *et seq*. ("FDCPA") and the California Rosenthal Act, Cal. Civ. Code §1788 *et seq*., claims. In addition,

21   this Court granted summary judgment in favor of Asset on its bona fide error affirmative defense. Ms.

22   Arteaga argues that this Court committed clear error in its ruling on the FDCPA claims, because it

23   accepted as true Asset's allegations, made a distinction unsupported by law, and erroneously decided

24   a factual issue. In addition, Ms. Arteaga argues that Asset failed to meet its burden to establish the bona

25   fide error affirmative defendants. Ms. Arteaga's FDCPA arguments misconstrue this Court's analysis

26   of the facts and law. In addition, without explanation, Ms. Arteaga's motion impermissibly re-raises

27   arguments addressed by this Court, raises new arguments, and relies on law not cited in her opposition

28   to the summary judgment motion. Accordingly, Ms. Arteaga's motion for reconsideration is DENIED.

                                           1

1

**BACKGROUND**

2        This Court set forth the applicable facts in the MSJ Order as follows:

3                    **Ms. Artega's Statement of Facts**

4        Ms. Arteaga received a letter from Asset informing her that Asset was "now in possession" of

5    one of her accounts, and was attempting to collect the debt.  After receipt of that letter, Ms. Arteaga

6    called Asset in "the early part of 2009" to dispute the debt, as she believes she had settled that debt

7    around twelve years prior.  Ms. Arteaga testified that the person she spoke with at Assert was

8    "unprofessional."  In addition, Ms. Arteaga testified that female she spoke with threatened her by telling

9    her that Assert "could attach [her] bank accounts with or without" her "sending them the

10   correspondence."  According to Ms. Arteaga, Asset began calling her "in the early part of 2009, probably

11   January or February."  Ms. Arteaga testified that Asset called her "daily" or "real close to daily."  Ms.

12   Arteaga recalls that Asset's debt collection calls ended around the summer of 2009.  On the basis of

13   these facts, Ms. Arteaga asserts FDCPA and Rosenthal Act claims against Asset, arguing that Asset's

14   constant and continuous calls and threats violate federal and state law.

15                    **Asset's Statement of Facts**

16       According to Asset's records, Asset employee Linda Plimely ("Ms. Plimely") received an

17   incoming telephone call from Ms. Arteaga regarding the debt that Asset was seeking to collect on

18   February 12, 2009.  Ms. Arteaga advised Ms. Plimely that she had previously paid the debt, and that she

19   had a copy of the check she used to settle it.  Ms. Plimely declares that she did not threaten that Asset

20   would initiate legal action against Ms. Arteaga or tell Ms. Arteaga that Asset would access her bank

21   account.

22       Asset contends that before Ms. Arteaga called Asset, she expected Asset would threaten to attach

23   her bank account.  Asset points out that Ms. Arteaga researched the company on the internet "to see if

24   it was even worth [her] time to call [Asset]" prior to the phone call.  Ms. Arteaga testified that during

25   her research, she "read very bad things" about Asset:

26           They—there is—if you go on the Internet, you can—there's people that complain and
             warn you don't send your—don't send anything to Asset because they—you know,
27           they've attached people's bank accounts.  They've—I don't remember everything that's
             on there, but if you just do research on Asset and you'll come up with plenty of different
28           complaints.

2

1    Ms. Arteaga found "warnings" that a person should not send information to Asset or Asset "will attach

2    your bank account, they will attach your wages."  In her research on Asset, Ms. Arteaga read comments

3    from people who wrote that "Asset had attached their wages.  Asset had done horrible things, horrible

4    things to affect them financially.  So it was just giant [sic] warning out there as far as don't correspond

5    with Asset at all."  Although Ms. Arteaga does not believe everything she reads on the internet, she does

6    believe "a good portion of what [she] read" about Asset.

7            Asset contends that Ms. Plimely did not threaten Ms. Arteaga, and any perceived threat was a

8    misunderstanding.  Asset disputes that Ms. Plimely discussed the possibility of attaching Ms. Arteaga's

9    bank account.  Asset argues, however, that even if Ms. Arteaga's statements are taken as true, Ms.

10   Plimely did not threaten her.

11           Asset argues that the circumstances surrounded the call and the alleged threat demonstrate that

12   Ms. Plimely's statement, if made, was not threatening or harassing.  According to Ms. Arteaga's

13   testimony, she called Asset to dispute the debt.  The person asked if Ms. Arteaga had a "settled in full

14   letter" to demonstrate that the debt was paid.  Ms. Arteaga responded that she did not have the letter,

15   because she had settled the debt.  She further explained that she did not have a "settled in full" letter,

16   but did have "copies of the check front and back" that she used to settle the account.  The person then

17   told her that "without a settled in full letter, [Ms. Arteaga] was still going to be responsible for the debt

18   and to send [Asset] all the information [she] had."  Ms. Arteaga responded:

19           I told them that I had concerns about doing that because of their reputation in—and
             giving them my account number, and the person said that they could attach my bank
20           account with or without that information.  They could look up my information, things
             along those lines, and so they could do it with or without my sending the correspondence.
21           I said okay and hung up.

22   Ms. Arteaga explained that she was concerned about sending Asset a copy of the settlement

23   check because :

24           by providing them my check they would then have my account number, and she
             said that she could---they could attach to my account with or without that.  They
25           could find that information.  So I didn't want to make it easier for them to attach
             my account for a bill that I'd paid 12 years before that.
26

27   Ms. Arteaga further explained that she "had read very bad things, that they were very—they

28   would attach—they would attach to people's bank account and things of that nature, and so I did

3

1 not want to provide a check to them." According to Ms. Arteaga, she told the Asset

2 representative that she "had concerns about sending [Asset] a check" prior to when the Asset

3 representative made the allegedly threatening statement.

4      Ms. Arteaga admitted that Asset's representative never threatened to sue her and never told her

5 that Asset *would* attach her bank account. Rather, according to Ms. Arteaga, Asset's representative

6 explained that Asset *could* gain access to her account without having the check.

7      According to Asset's records, after the February 12, 2009 call, Asset marked Ms. Arteaga's

8 account as "disputed" and sent her a letter dated February 17, 2009 requesting that Ms. Arteaga send

9 copies of any documents showing that she had previously paid the debt. Among other things, Asset's

10 letter explained that Ms. Arteaga could send a letter stating that the account had been "paid in full or

11 settled," or a copy of a cancelled check or other form of payment along "with a letter/statement that

12 indicates a satisfaction amount relating to the payment instrument." Ms. Arteaga did not respond to

13 Assert's February 17, 2009 letter.

14      Asset sent Ms. Arteaga a second letter dated March 18, 2009. The second letter again requested

15 documents showing that Ms. Arteaga made the alleged payment. Asset received no response from Ms.

16 Arteaga. On April 15, 2009, Asset updated it records to reflect that it considered Ms. Arteaga's dispute

17 of the account to be "closed."

18      Asset then resumed efforts to collect the debt. Between April 16, 2009 and September 29, 2009,

19 Asset's records reflect that Asset telephoned Ms. Arteaga a total of eighteen times. Specifically, Asset

20 called on the following dates: 4/16, 4/28, 5/8, 5/13, 5/14, 5/27, 6/12, 6/16, 6/25, 6/30, 7/6, 7/13, 7/22,

21 8/4, 8/12, 8/18, 9/2, and 9/29. Asset noted the following outcome of the calls:

22      (A)    On nine occasions, no one answered the phone;

23      (B)    On three occasions, an answering machine was detected, but no message was left;

24      (C)    On two occasions, an answering machine was detected and a message was left;

25      (D)    On one occasion, a busy tone was detected;

26      (E)    On one occasion, someone answered but did not confirm whether it was Ms. Arteaga;

27      (F)    On one occasion, someone answered and selected a prompt to indicate that it was the

28 right party, but the call dropped before it could be connected to a live representative; and

1          (G)    On one occasion, the call dropped before it could be completed.

2    Asset contends that the purpose of the calls was to contact Ms. Arteaga to arrange payments to satisfy

3    the debt, and that no calls were placed with the intent to annoy, abuse or harass Ms. Arteaga.

4          Asset disputes Ms. Arteaga's recollection that Asset called "daily."  Ms. Arteaga claimed she

5    knew Asset called her because "[t]here were messages on the answering machine, and we have caller

6    ID."  But Ms. Arteaga did not know how many times Asset called her.  She also admitted that she was

7    getting calls "every few days" from a different collection agency in 2009.  Ms. Arteaga was unable to

8    say how many messages Asset left for her.  Ms. Arteaga admitted that she "would just delete through

9    them" and that she "didn't listen to the full message."  Ms. Arteaga could not remember how many times

10   her caller ID reflected that Asset had called her.  She explained that the caller ID displayed "just the 800

11   numbers," but conceded that she does not remember what the phone number was that she believed to

12   be connected to Asset.  She also admitted that more than one "800 number" displayed on her caller ID

13   in 2009.  Ms. Arteaga had no written records of the numbers displayed on her caller ID in 2009.

14         Asset submits that any alleged threat was a bona fide error.  Asset maintains policies and

15   procedures designed to avoid making false, deceptive, or misleading representations in connection with

16   the collection of a debt.  Asset's employees, including Ms. Plimely, participate in a comprehensive

17   training program, and learng about federal and state collection laws.  Asset's collectors are trained that

18   it is unlawful to threaten to sue a consumer when Asset does not intend to do so, and unlawful to

19   threaten to attach a consumer's asssets when Asset does not have a judgment against the consumer.

20   Asset's employees are tested annually on their knowledge of FDCPA and other applicable laws, and are

21   advised that deviation from the requirements of FDCPA or state collection laws can be grounds for

22   disciplinary action, including termination.

23   **Procedural History**

24         Ms. Arteaga initiated this action on October 21, 2009.  Asset moved for summary adjudication

25   on July 9, 2010.  The Court issued the MSJ Order after full briefing on August 23, 2010.  Ms. Arteaga

26   moved for reconsideration of the MSJ Order on September 2, 2010 and an amended motion on

27   September 10, 2010.  This Court found this motion suitable for decision without a hearing, vacated the

28   November 8, 2010 hearing pursuant to Local Rule 230(g), and issues the following order.

1

STANDARD OF REVIEW

2      The Court has discretion to reconsider and vacate a prior order. *Barber v. Hawaii*, 42 F.3d 1185,

3 1198 (9th Cir.1994); *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 396 (9th Cir.1992); *see also*, Fed.

4 R. Civ. P. 59(e).  Motions to reconsider are committed to the discretion of the trial court. *Combs v. Nick*

5 *Garin Trucking*, 825 F.2d 437, 441 (D.C.Cir.1987); *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir.1983)

6 (en banc).  A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests

7 of finality and conservation of judicial resources." *Kona Enterprises v. Estate of Bishop*, 229 F.3d 877,

8 890 (9th Cir. 2000).

9      To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court

10 to reverse its prior decision. *Id.; see also, Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp.

11 656, 665 (E.D.Cal.1986), *affirmed in part and reversed in part on other grounds*, 828 F.2d 514 (9th

12 Cir.1987).  "A motion for reconsideration should not be granted, absent highly unusual circumstances,

13 unless the district court is presented with newly discovered evidence, committed clear error, or if there

14 is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold*, 179 F.3d 656,

15 665 (9th Cir. 1999).

16      Motions for reconsideration are not the place for parties to make new arguments not raised in

17 their original briefs. *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-6 (9th

18 Cir.1988). Nor is reconsideration to be used to ask the court to rethink what it has already thought.

19 *United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D.Ariz.1998). "A party seeking reconsideration

20 must show more than a disagreement with the Court's decision, and recapitulation of the cases and

21 arguments considered by the court before rendering its original decision fails to carry the moving party's

22 burden." *U.S. v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D.Cal.2001).

23      With these standards in mind, the Court turns to Ms. Arteaga's arguments.

24

DISCUSSION

25

**15 U.S.C. §1692d and 15 U.S.C. §1692d(5) Claims**

26      Ms. Arteaga argues that this Court erred in granting summary judgment against her on her 15

27 U.S.C. §1692d of the FDCPA ("Section 1692d") claims, because the Court "accepted that Defendant

28 called Plaintiff eighteen times."  Indeed, Ms. Arteaga contends multiple times in her memorandum that

6

this Court accepted as true the defendants' version of the facts, even though Ms. Arteaga disputed those facts by testifying that Asset called her "daily" or "almost daily."

Ms. Arteaga's assertion that this Court accepted defendants' facts as true is false and unsupported by a reading of this Court's order. Nowhere in its MSJ Order did this Court accept as true defendants' facts. Rather, on her Section 1692d claims, the Court reasoned as follows (emphasis added):

> Under the facts of this case, the Court finds that Asset's conduct did not rise to the level of harassment under Section 1692d, and fails to raise a triable issue of fact as to whether the phone calls were initiated with the intent to harass in violation of Section 1692(5). None of the egregious conduct identified above is present in this case. Ms. Arteaga presents no evidence that Asset called her immediately after she hung up, called multiple times in a single day, called her place of employment, family, or friends, called at odd hours, or called after she requested Asset to cease calling. Indeed, Ms. Arteaga does not claim that she requested Asset to cease calling her, and only recalls the substance of one conversation in which Ms. Arteaga initiated the communication with Asset. **Ms. Arteaga fails to cite a single case in which "daily" or "nearly daily" phone calls alone raise an issue of fact as to these claims. Rather, the case law supports Asset's position that, even if Ms. Arteaga's allegations are believed as true, and considered under the "least sophisticated debtor" standard, the conduct does not constitute harassment as a matter of law**.

The Court based its decision, not on whether Asset called her 18 times, but on whether "daily" or "near daily phone calls" during the relevant time period raised a question of fact on the issue of harassment. This Court pointed out that no authority found that "daily" or "near daily" calls raised an issue of fact for a jury to determine whether the conduct violated Section 1692d. The Court plainly stated that "even if Ms. Arteaga's allegations are believed as true," the conduct did not constitute harassment as a matter of law. Accordingly, this Court denies reconsideration on these grounds.

Next, Ms. Arteaga argues that this Court erred because whether the conduct constitutes harassment was a factual issue for the jury to decide, not an issue for the Court to decide. To support this assertion, Ms. Arteaga string cites multiple cases, most of which she cited in opposition to the summary judgment motion. Ms. Arteaga re-asserts her original argument that because the facts are contested, there is a question for the jury.

As this court set forth above, reconsideration is not to be used to ask the court to rethink what it has already thought. *Rezzonico*, 32 F.Supp.2d at1116. "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden."

7

*Westlands Water Dist.*, 134 F.Supp.2d at1131.  In its MSJ Order, this Court considered the cases cited by Ms. Arteaga, both in her opposition and in the instant motion.  Indeed, the MSJ Order includes a four-page assessment of the state of the law on Section 1692d claims, and cited over twenty published opinions on the matter.  Ms. Arteaga ignores this Court's lengthy analysis in this motion, and her arguments on reconsideration simply recapitulate her original argument.  In addition, and most importantly, Ms. Arteaga continues to fail to cite a single case in which "daily" or "nearly daily" phone calls for any period of time raised a question of fact on harassment.  Accordingly, this Court denies reconsideration on this ground.

Ms. Arteaga argues that this Court committed clear error because it failed to construe the evidence liberally.  In its order, this Court noted that the FDCPA is to be construed liberally; however, liberal construction of a statute does not mean that Ms. Arteaga withstands summary adjudication of her claim without having evidence to support it.  Courts across the country have found that:

> some conduct does not constitute harassment as a matter of law.  *See e.g., Gallagher v. Gurstel, Staloch & Chargo, P.A.,* 645 F.Supp.2d 795 (Dist. Minn. 2009) (single laugh by employee of debt collector during phone call with debtor to discuss holds placed on funds in debtor's bank account was not harassing, oppressive, or abusive conduct violative of FDCPA; laugh was during a single phone call involving only employee and debtor that was initiated by debtor, and there were no profanities, name calling, insults, unwanted calls or disclosure of private information to third parties caused by debt collector); *Baker v. Allstate Financial Services, Inc.*, 554 F.Supp.2d 945 (Dist. Minn. 2008) (debt collector's statement in voicemail that consumer's "case" was "urgent" and "time sensitive" was not sufficiently harassing, oppressive, and abusive to violate FDCPA); *Thomas v. LDG Financial Services, Inc.*, 463 F.Supp.2d 1370 (N.D. Ga. 2006) (alleged conduct by debt collector during telephone conversation, in telling debtor that they were going to get their money one way or another, yelling that Georgia was a garnishable state, then hanging up, and asking debtor what her problem was because she was making the same salary as she did when she was paying her bills, did not rise to the level of harassment prohibited by the FDCPA); *Tucker v. The CBE Group, Inc.*, – F.Supp. 2d. –, 2010 WL 1849034 (M.D. Fla. 2010) (facts did not raise reasonable inference of intent to harass where debt collector made 57 calls to the plaintiff, including seven calls in one day, because the debt collector never spoke to the debtor, was never asked to cease calling, and never called back on the same day it had left a message).

Even liberally construed, Ms. Arteaga continues to fail to cite a single case in which "daily" or "nearly daily" phone calls alone raise an issue of fact as to these claims.  In fact, the cases cited in which conduct was found not to constitute harassment as a matter of law involved facts comparatively more egregious that the instant action.  The case law supports this Court's decision that, even if Ms. Arteaga's allegations are believed as true, and considered under the "least sophisticated debtor" standard, the

conduct does not constitute harassment as a matter of law. Accordingly, Ms. Arteaga's motion to reconsider this Court's grant of summary adjudication against her on her Section 1962d and 1962d(5) claims is denied.

### 15 U.S.C. §1692e(4) and 15 U.S.C. §1692e(5) Claims

The FDCPA further provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of a debt." 15 U.S.C. §1692e. Ms. Arteaga contended that by "threatening to attach her bank account," Asset violated two Section 1692e subsections. Ms. Arteaga argued that Asset's statement violated Section 1692e(4), which prohibits a "representation or implication that nonpayment of any debt will result in the...attachment...of any property...unless such action is lawful and the debt collector or creditor intends to take such action." Ms. Arteaga further contended that Asset's statement that it could attach her bank account was a "threat to take any action that cannot legally be taken or that is not intended to be taken," conduct forbidden by Section 1692e(5). The Court considered Ms. Arteaga's Section 1692e claims under the "least sophisticated consumer standard." *Swanson v. Southern Oregon Credit Service, Inc.,* 869 F.2d 1222 (9th Cir. 1988).

Ms. Arteaga argues that this Court's "finding that Defendant did not violate [the statutes] because Defendant did not indicate that it 'would' take action to attach her bank account and instead indicated only that it 'could' take such action is in error and does not comport with Circuit Court case law finding such distinction to be immaterial." Ms. Arteaga's argument is unavailing for three reasons.

First, the Court's decision did not rely solely on the "would/could" distinction. The Court found that the "circumstances surrounding the statement make clear that the least sophisticated consumer would not believe the statement to be a threat to take action without authority or intent to do so." The Court considered many circumstances, including:

> Ms. Arteaga admits that she called Asset to dispute the account. Ms. Arteaga further admits that before she called Asset to dispute the account, she had done online research regarding on Asset and had read warnings that she should not send any information, including checks, to Asset. Ms. Arteaga further admits that she did not want to send Asset the check to make it easier on Asset to attach her account. Ms. Arteaga further admits that she asked Ms. Plimely about whether sending the check would allow asset to attach her bank account, and that Ms. Plimely's statement was in response to Ms. Arteaga's direct question related to whether Asset could attach her bank account. Ms. Arteaga admits that she was never told that Asset *would* attach her bank account. Under

1   these circumstances, in which the consumer had initiated the phone call, raised the
2   subject regarding the attachment of the bank account, and asked a question about Asset's
    abilities to attach her bank account, the allegedly threatening statement was a response
3   to the customer's direct question on the subject, and the debt collector did not make any
    statements that action would be taken, the least reasonable consumer would understand
4   Ms. Plimely's response was informational and not a threat. *See, Wade v. Regional Credit
    Ass'n*, 87 F.3d 1098 (9th Cir. 1996) (collection agency's notice that failure to pay amount
5   may adversely affect debtor's credit was not a threat to take action that could not legally
    be taken in violation of FDCPA).

6   On the basis of this reasoning, of which the would/could distinction was a small part, the Court granted

7   summary judgment in favor of Asset and against Ms. Arteaga.

8         Put another way, while Ms. Arteaga's argument focuses the distinction, the Court's decision did

9   not.  The significant factors considered were: (1) the consumer had initiated the phone call, (2) the

10  consumer raised the subject regarding the attachment of the bank account, (3) the consumer asked a

11  question about Asset's abilities to attach her bank account, (4) the allegedly threatening statement was

12  a response to the customer's direct question on the subject, and (5) the debt collector did not make any

13  statements that action would be taken.  Ms. Arteaga makes no effort to address the other factors upon

14  which the Court based its decision.  Ms. Arteaga makes no attempt to support a position that based on

15  these circumstances and the applicable case law, the least reasonable consumer would understand Ms.

16  Plimely's response was informational and not a threat.  In addition, Ms. Arteaga continues to insert her

17  subject opinion of the phone call, ignoring the well-settled law that the "reasonable consumer" standard

18  is objective.

19        Second, the Court noted in its order that case law does support the distinction.  The Court found

20  that Asset's  alleged statement that it could attach Ms. Arteaga's bank account even if Ms. Arteaga did

21  not send Asset her check would be viewed as "informational" by the least sophisticated consumer, and

22  not a threat to do something that Asset could not legally do.  The Court based on its conclusion on the

23  following case law and analysis:

24        "Merely advising the debtor of the agency's options with which to pursue the debt is the
          sort of truism that is legally insufficient to violate 1692e." *Sparks v. Phillips & Cohen
25        Assoc., Ltd.*, 641 F. Supp. 2d 1234, 1249 (S.D. Ala. 2008).  In *Sparks*, the plaintiff
          alleged that the debt collector stated that it could force her to sell her deceased mother's
26        house in probate to pay her mother's debts.  The court found that such a statement was
          neither a threat or a false statement, but rather an "innocuous statement" of the debt
27        collector's "legal rights." *Id*.  Accordingly, the court granted summary judgment in favor
          of the debt collector on the plaintiffs' Section 1692e(4) and (5) claims.  Similarly, in
28        *Shuler v. Ingram & Assoc.*, – F.Supp. 2d –, 2010 WL 183868 (N.D. Ala. 2010), the court

10

1    found that a debt collectors statement that it "may place a lien on plaintiffs' property,
2    garnish [plaintiff's] wages, that [the debt collector] prosecutes debts like his, and always
     wins" did not constitute threats or actions that the debt collector could not or did not
3    intent to take.

4    Ms. Arteaga fails to address this case law.

5         Third, although Ms. Arteaga argues that "Circuit Court" case law finds the distinction to be

6    immaterial, Ms. Arteaga fails to cite a comparable case in which the distinction was immaterial.  Ms.

7    Arteaga's argument relies on unsupported statements of the law related to the Federal Trade Commission

8    Act ("FTC") Act, common law deception, an FTC Commentary on Section 1692e(5), and

9    distinguishable case law.  Even if the law cited were applicable or apposite, motions for reconsideration

10   are not the place for parties to make new arguments not raised in their original briefs.  *Northwest*

11   *Acceptance Corp.*, 841 F.2d at 925-6.  Accordingly, Ms. Arteaga's motion for reconsideration is denied

12   on these claims.

13                                          **Bona Fide Error**

14        The Court ruled "in the alternative, even if Ms. Arteaga successfully raises a question of fact, the

15   bona fide error affirmative defense bars liability on her Sections 1692e(4) and (5) claims, and Rosenthal

16   Act claims."  Section 1692k(c) provides:

17        A debt collector may not be held liable in any action brought under this title [15 USCS
          §§ 1692 et seq.] if the debt collector shows by a preponderance of evidence that the
18        violation was not intentional and resulted from a bona fide error notwithstanding the
          maintenance of procedures reasonably adapted to avoid any such error.
19

20   15 U.S.C. §1692k(c).  Debt collectors may assert the "bona fide error" defense as an affirmative defense

21   to avoid liability.  "The debt collector must only show that the violation was unintentional, not that the

22   communication itself was unintentional." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir.

23   1998). Because it is an affirmative defense, Asset bears the burden of proof at summary judgment stage.

24   *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006).  To establish its

25   affirmative defense, Asset must demonstrate that it maintains policies and procedures designed to avoid

26   making false deceptive or misleading representations in connection wit the collection of a debt.

27        In this motion for reconsideration, Ms. Arteaga devotes four pages to her bone fide error

28   argument.  This argument is twice as long as the argument in her opposition, raises arguments for the

                                                   11

1   first time, and relies on cases not originally cited or discussed in her opposition to the summary

2   judgment motion.  Of her opposition, the Court noted:

3        Ms. Arteaga fails to dispute Asset's evidence of its policies and procedures.  In
         opposition, Ms. Arteaga submits that she "lacks sufficient knowledge" of Asset's policies
4        and procedures.  In addition, Ms. Arteaga claims that Asset failed to submit any evidence
         to support its position that it maintains adequate policies and procedures, notwithstanding
5        the fact that Asset submitted the two declarations described above.  Ms. Arteaga provides
         no evidence or argument to oppose meaningfully Asset's bona fide error affirmative
6        defense.

7   Ms. Arteaga fails to explain why she failed to cite the law upon she now relies in her opposition, or why

8   she failed to raise the legal issues now raised.  As set forth above, reconsideration is not the place to raise

9   new arguments or law that Ms. Arteaga failed to raise in her opposition.  Accordingly, reconsideration

10  is inappropriate.

11       Moreover, reconsideration of the Court's decision on this claim would not affect the judgment

12  of this Court.  The bona fide error affirmative defense was considered in the alternative.  First and

13  foremost, the Court found that Ms. Arteaga failed to raise a material issue of fact on her claims, and

14  granted judgment in favor of Asset as a matter of law.  The Court reaffirms that decision in this order.

15                                    CONCLUSION

16       For the foregoing reasons, this Court DENIES Ms. Arteaga's motion for reconsideration.

17       IT IS SO ORDERED.

18  Dated:    September 15, 2010             /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE
19

20

21

22

23

24

25

26

27

28

                                          12